UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAMELA J. HILCHEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 005 CV 10152 NMG |
| ) | |
| CITY OF HAVERHILL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Pamela J. Hilchey ("Ms. Hilchey"), by her attorney, Eric P. Finamore, hereby submits her brief in opposition to Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**Summary of Plaintiff's Opposition**

The core of Ms. Hilchey's complaint is that she was arrested and prosecuted without probable cause to believe she had committed the crime of which she was accused, in violation of her constitutional rights. Ms. Hilchey opposes the motion on the basis of the factual record, the substantive law, and the procedural posture of the case, particularly with reference to Fed. R. Civ. P. 56(f), because discovery has not been completed, as set out on the Plaintiff's Motion to Compel Discovery, which is presently on file and pending before the Court.

*The Facts As to Which the Parties Agree*

The precipitating events for Ms. Hilchey's complaint occurred on Saturday, September 7, 2002. On that date, Ms. Hilchey took a drive from her home, first to take a walk at a local lake, and then to buy some bagels. As a result of that action, one of Ms.

Hilchey's neighbors, Phyllis Monigle, called the Haverhill Police Department and reported that, although she did not see the occurrence, she was informed by her children Katelyn (nine years of age at that time), Matthew (five years of age), Kevin Regan (a neighborhood friend of the Monigle children, six years of age) and another child, Amanda Bastarache (also nine), that when they were riding their bicycles Ms. Hilchey "came at them with her car." Ms. Monigle requested a police officer and the Haverhill Police dispatcher agreed to send one. Officer Melanson (whose usual duties in the Haverhill Police Department are those of a detective) responded; he was accompanied by the street supervisor for that Saturday morning, Sergeant Pellot.

Officer Melanson interviewed Ms. Monigle and three of the children. A decision was made to seek an arrest warrant for Ms. Hilchey. Later that day, Katelyn Monigle, Matthew Monigle, and Amanda Bastarache were interviewed at the Haverhill Police Department and gave, in the presence of their parents, statements regarding the events of that morning. Officer Melanson prepared a Narrative Report/Summary and application for a criminal complaint, collected the statements, and left them, at the end of his shift, with the succeeding officer in charge, who forwarded them to the magistrate in Haverhill District Court. The magistrate allowed the application and issued the warrant. Ms. Hilchey was arrested, taken into custody, booked and released. She was arraigned on Monday, September 9, 2002, on three counts of assault with a dangerous weapon, G.L. c. 265, § 15B(b). A fourth count was later added. The prosecutor dismissed on *nolle prosequi* grounds the counts of assault against Matthew Monigle, Amanda Bastarache, and Kevin Regan. After trial, Ms. Hilchey was acquitted on the last count regarding Katelyn Monigle.

2

*The Substantive Opposition*

The defendants maintain, first, that there was no constitutional violation because there was "ample evidence to establish probable cause" to apply for the complaint, obtain the warrant, and engage in the prosecution. Defendants' Brief at 3. Defendants' argument is apparently intended to suggest that an investigation occurred first, without a decision as to whether or not a criminal complaint should issue, and the conclusion to make the application was drawn only subsequent to conducting the investigation.

However, the evidence shows that Ms. Hilchey was charged with a crime before supporting facts were developed. A review of this summary judgment record demonstrates that the decision to charge Ms. Hilchey was made *before the statements were taken and before the investigation – such as it was – was complete.* The record further demonstrates that the guidelines set forth in the Haverhill Police Department Manual for preliminary investigations were not followed. There is evidence showing that the decision to charge Ms. Hilchey was not made by Officer Melanson, who was titularly in charge of the investigation and who was the officer who had primary responsibility to respond to Ms. Monigle's call to the Haverhill Police. Finally, the record contains evidence that tends to show that the police officers were motivated by factors other than the evidence of the felony with which Ms. Hilchey was charged.

Second, defendants argue that no liability can be found for their having violated Ms. Hilchey constitutional rights because "failing to properly investigate" is not actionable. Defendants' Brief at 4 – 5. This is a straw-man argument, however, because Ms. Hilchey is claiming not only that the Haverhill Police ought to have sought other sources of evidence from "the eyewitness statements" of the victims, but that the very statements themselves were obtained *after* the Haverhill Police decided that she was to be

3

charged with the felony.

Third, defendants maintain that there is no evidence of an unlawful custom or practice on the basis of which the municipal defendant can be held liable pursuant to *Monell v. New York City Dep't of Soc. Services*, 436 U.S. 658 (1978). Defendants' Brief at 5 – 6. Ms. Hilchey argues, in opposition, that the Haverhill Police Department did indeed develop a custom regarding the events in the Pear Tree Road subdivision, and that that custom was the basis for the criminal charges against her rather than any objective evidence that the Haverhill Police had regarding her actions on September 7, 2002.

Finally, the individual defendants ask for summary judgment on the basis of qualified immunity. Defendants' Brief at 6 – 9. The defense of qualified immunity is not available to the individual defendants because Ms. Hilchey was arrested and charged without probable cause in violation of a clearly established Constitutional right and it was not objectively reasonable for the individual defendants, knowing what they knew, to believe that there was probable cause.

## Fact Issues Left Unresolved by the Summary Judgment Record

The evidence demonstrates that the defendants' "official" story, as set forth in their motion papers, is controverted by numerous portions of the summary judgment record.

*(a)   The Decision to Apply for a Criminal Complaint*

This case presents sharp disagreements as to material facts. First, a key issue is when the decision was made to apply for a criminal complaint against Ms. Hilchey. The defendants' motion suggests that the decision was made *subsequent* to the investigation and that, in particular, the gathering of witness statements *on the basis of which the application for the complaint against Ms. Hilchey was made*. However, there is a

4

material dispute regarding when the decision was made and, in particular, a discrepancy exists between the accounts given by Sergeant Pellot and Officer Melanson.

Officer Melanson wrote in his supplemental report on September 8, 2002, a day after the incident on the basis of which Ms. Hilchey was charged and arrested:

> "After speaking with the victims and their parents, Melanson was advised by Sgt. Pellot to go to the police station and apply for a complaint to summons [*sic*] Pamela Hilchey to court."

*Exhibit D*. Officer Melanson testified at his deposition, confirming the foregoing: "Yeah, that's what he said." *Exhibit E*, Melanson Dep. Tr., p. 44, l. 22.

At that point, the children had not yet provided the statements to which they (and their parents) subscribed and which were provided to the magistrate in support of the criminal complaint.

Officer Melanson's nearly-contemporaneous report and his current recollection are both that he was directed by a superior to apply for a criminal complaint prior to the conclusion of the investigation and that the investigation continued in light of this direction.

Sergeant Pellot, however, explicitly denied the truth of the sentence in Officer Melanson's supplemental report. *Exhibit J*, Pellot Dep. Tr., p. 26, ll. 8 – 21.

The finder of fact cannot avoid having to make a determination on this issue: If they believe Officer Melanson, then the continued "investigation" could be nothing more than an attempt to spin, fabricate, or select information to include in an application for a complaint to justify the prior decision to prosecute Ms. Hilchey. If the finder of fact believes Officer Melanson on this point, then the decision to apply for a criminal complaint was not made by him. Officer Melanson's account is supported by the deposition testimony of Phyllis Monigle:

> A: And then Victor [Pellot] said . . . we have – you know, we have to do something and that's when they took it in their hands.
>
> Q: What do you mean by that?
>
> A: Then it became a police matter.

*Exhibit F*, P. Monigle Dep. Tr., p. 68, ll. 16 – 21.

If the finder of fact believes Sergeant Pellot, then the decision to apply for a criminal complaint was made by Officer Melanson. *Exhibit J*, Pellot Dep. Tr., p. 19, l. 4 – p. 20, l.1

The difference is significant: it requires a fact finder to determine whether all activity of the Haverhill Police Department constituted a legitimate investigation (as argued by the defense) or a way to bolster an official directive to charge Ms. Hilchey with a crime, even though no investigation had been conducted.

There is also a choice to be made by the finder of fact regarding whose account is to be believed as to why the application for a criminal complaint was made. It is clear that Officer Melanson signed the application. If the criminal complaint embodies Officer Melanson's attempt to satisfy the directive of his superiors, then the objective factual basis for the complaint is compromised. On the other hand, if the decision was Officer Melanson's, then justification for the arrest depends upon what he did or failed to do in connection with the investigation.

*(b)   Officer Melanson Failed to Follow the Procedures for a Preliminary Investigation Outlined in the Police Manual of the Haverhill Police Department*

The Manual of the Haverhill Police Department directs officers conducting a preliminary investigation to make "[e]very effort . . . to locate, identify, and interview reliable witnesses." *Exhibit O*, Haverhill Police Manual, Sec. III, "Policies and Procedures," p. 28-8. The sole witness known to the Haverhill Police who was more

6

mature than nine years old was Ms. Hilchey. Officer Melanson admits that he did not interview her:

> Q: Did you speak with the suspect prior to going and applying for the complaint?
>
> A: No.
>
> Q: Why not?
>
> A: I don't know. I don't know if she was around. I don't know. I don't know.

*Exhibit E*, Melanson Dep. Tr., p. 60, ll. 15 – 20.

A fact-finder could determine that Officer Melanson (i) did not follow the direction in the Haverhill Police Manual and (ii) did not know why he did not do so (to the point of thrice repeating "I don't know" in response to the question) because Officer Melanson was proceeding with the prosecution of Ms. Hilchey as he was directed to do; further, (iii) that Officer Melanson did not anticipate uncovering any useful information in doing what he had been directed to do.[1]

A fact finder could make a number of findings favorable to Ms. Hilchey on the basis of the following testimony given by Officer Melanson:

> Q: And you didn't speak with Mrs. Hilchey; is that correct?
>
> A: Correct.
>
> Q: And it's on the basis of testimony of three witnesses, each of whom is under ten; is that correct?

---

[1] Indeed, when *Ms. Hilchey* made a complaint regarding threats made against her, Officer Desjarden, who signed the Haverhill Police Incident Report, included in his report an indication that he interviewed the suspect: "I talked to S and he stated that he did not make any threats of any kind." *Exhibit E*, Melanson Dep. Ex. 4, p. 9.

7

A: The basis is – basically is this[2] why I didn't talk – all the problems that they've been having, the department realized that it's got to be dealt with, that's why basically. By the time I got it, that thing [the assignment to respond to the call from Ms. Monigle], all this stuff [the contents of Melanson Ex. 4] had happened. I'm sure everything was – *it was time to do something* (emphasis added).

Q: And just for reference, the first incident here [in Melanson Ex. 4] is dated in 1995 and then you go up –

A: Mm-hmm.

Q: – and there's one dated in 2002 – 2001, excuse me. There is one dated October 5th 2001 there are three separate reports in here. So, there is a history of incident reports here. And what you just testified to is, we knew we had to do something at the police department because of what was going on here?

A: Correct.

   MS. GILGUN RYAN:   Objection. You can answer.

Q: Do you know, and forgive me if I asked this, do you know why it is that you were asked to get additional statements after making out your initial incident report?

   MS. GILGUN RYAN:   Objection.

A: I'm sure they wanted to make sure everything was – 'cause we're dealing with a police officer's wife –

Q: Yes.

A: – make sure everything was – get as much facts as we could before we, you know, put the complaint in.

Q: Okay. But you were going to put the complaint in before you got the statements in the afternoon?

   MS. GILGUN RYAN:   Objection.

A: I was –

---

[2] At the deposition, Officer Melanson referred with a gesture to Melanson Dep. Tr. Ex. 4 in its entirety (27 pages of collected police incident reports), as demonstrated by his follow-up testimony in that portion of the transcript quoted above.

8

>MS. GILGUN RYAN:     You can answer.
>
>A:     I was just going by what they told me.

*Exhibit E*, Officer Melanson, Dep. Tr., p. 95, l. 4 – p. 97, l. 9.

Officer Melanson's account of why he did what he did in the investigation, ending with the plaintive, *"I was just going by what they told me"* is sufficient to sustain a jury's determination that: (i) the decision to charge Ms. Hilchey was not made on the basis of the "investigation;" (ii) Officer Melanson was under orders to do what he did; (iii) the investigation into the incident of September 7, 2002 was of secondary importance to the decision to arrest Ms. Hilchey; and (iv) the presence of an objectively-determined basis for probable cause had little or nothing to do with that; so (v) inconsistencies in the information presented in the course of the investigation were irrelevant; and it was most important to "get by the magistrate," not based upon the results of the investigation, but because *"it was time to do something."* *Exhibit E*, Melanson Dep. Tr., p. 96, ll. 1 – 2, quoted *supra* (emphasis added).

## LEGAL ARGUMENT

### Point I

### UNDER THE TOTALITY OF THE CIRCUMSTANCES IT WAS NOT REASONABLE FOR THE HAVERHILL POLICE TO APPLY FOR A CRIMINAL COMPLAINT CHARGING MS. HILCHEY WITH ASSAULT WITH A DANGEROUS WEAPON PURSUANT TO G.L. c. 265, § 15B(b)

There is a well-established Constitutional requirement that no arrest, much less a prosecution, should be made without probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Abreu-Guzmán v. Ford*, 241 F.3d 69, 73 (1st Cir. 2001). Moreover, application for a criminal complaint without probable cause is itself actionable pursuant to § 1983. *Losch v. Borough of Parkesburg*, 736 F.2d 903 (3d Cir. 1984); *Woodley v. Nantucket,*

645 F.Supp. 1365 (D.Mass. 1986). Police officers can be liable for seeking a criminal complaint if they lacked probable cause. *Carey v. City of Fall River*, 870 F.2d 40 (1st Cir. 1989).

A probable cause determination rests upon reasonableness. For there to be probable cause, it must be shown that, in the totality of the circumstances, a reasonable person would believe that the defendant had committed or was committing a crime. *United States v. Maldonado*, 14 F.3d 95, 105 (1st Cir. 1994). "'Probable cause' means a reasonable likelihood." *Valente v. Wallace*, 332 F.3d 30, 32 (1st Cir. 2003); *United States v. Reyes*, 225 F.3d 71, 75 (1st Cir. 2000). The evidence should be sufficient to "warrant a man of reasonable caution" to believe that a crime had been committed and that the defendant had committed it. *Beck v. Ohio*, 379 U.S. at 96; *Valente v. Wallace, id.*

In this case, the crime for which the foregoing test was operative is assault with a dangerous weapon, G.L. c. 265, § 15Bb and, more particularly, with an automobile. The crime involves a "serious charge." *See Exhibit H* (reason for issuance of warrant). It carries a maximum penalty of five years in state prison. The summary judgment record is devoid of any evidence that any crime other than assault with a dangerous weapon was ever under consideration.

The "definition of assault is an attempt or threat to do bodily harm." *Commonwealth v. Shaffer*, 367 Mass. 508, 515 (1975), quoted in *Commonwealth v. Gorassi*, 432 Mass. 244, 248 (2000). Thus, it is an attempted battery or an immediately threatened battery. *Id.* Massachusetts appellate courts have had a few opportunities to define assault with a motor vehicle. In *Commonwealth v. Chambers*, 57 Mass.App.Ct. 47 (2003), "the jury were warranted in finding that Jason Chambers, in jealous rage, aimed and drove his automobile into one in which his former lover was a passenger . . ." In that

10

case, there was physical evidence of the intent to cause bodily harm (unlike in the present case). In *Commonwealth v. Stanton*, 17 Mass.App.Ct. 1, 3 (1983), the defendant, in his automobile, "crowded [the victim] and sideswiped the left front fender of his car, denting it." When the two vehicles stopped, "[a]t close quarters, the defendant threw the tire iron against the driver's window shattering it." *Id.* This opinion, too, presents facts substantially different from the present ones. Finally, in the rescript opinion of *Commonwealth v. O'Neil*, 3 Mass.App.Ct. 761-762 (1975), the Appeals Court found no reversible error in a defendant's conviction based upon an assault that "occurred as the defendant drove an automobile at [the victim] in effecting the getaway." *Id.*

It is clear that, at the least, that type of criminal assault founded upon an immediately threatened battery requires "proof of intent to cause apprehension," and not merely "proof that the action which constitutes menacing conduct be intentional." *Commonwealth v. Musgrave*, 38 Mass.App.Ct. 519, 524, *aff'd*, 421 Mass. 610, 611 (1996)(explicitly adopting the Appeals Court's opinion).

Probable cause did not exist on September 7, 2002, because there was no "reasonable likelihood" – indeed, no evidence – that Ms. Hilchey intended to cause apprehension in the children. "Reasonable caution" prohibited the conclusion that the elements[3] of assault with a dangerous weapon existed.   *See Beck; Valente; supra.*

There are material facts which would prevent a person of reasonable caution from concluding that Ms. Hilchey committed the crime of assault with a dangerous weapon:

- The oldest of the witnesses/victims was nine years old at the time of the

---

[3] Officer Melanson testified that he was trained at the police academy regarding the investigation of the report of an assault to "get all the facts straight. And if you have all the elements of the crime, to take the proper steps." *Exhibit E,* Melanson Dep. Tr., p. 56, ll. 15 – 17.

incident; years before she had an altercation with Ms. Hilchey because of "a fight" that the witness had with Ms. Hilchey's daughter (*Exhibit L* at 2);

- There had been chronic disputes in the neighborhood between Ms. Hilchey and the adult parents of the witnesses and victims;
- A letter directed to Police Chief Brighi in 2001 making complaints about the plaintiff was signed by a number of neighbors, some of whom were the complainants on September 7, 2002;
- One of the neighbors announced to Ms. Hilchey that they were "out to get her and were going to get her good." *Exhibit E*, Melanson Dep. Ex. 4, at 14 – 15.

In light of the foregoing, demonstrably known to the Haverhill Police Department, it was objectively unreasonable in the exercise of reasonable caution to believe that Ms. Hilchey had committed the crime of assault with a dangerous weapon against Katelyn Monigle, Matthew Monigle, and Amanda Bastarache.

First, the police dispatcher who took the call from Ms. Monigle categorized the call as one pertaining to assault and said that Ms. Hilchey "was driving the car and looked like she went after the kids." *Exhibit P* at 2.

Second, Det. Melanson first spoke with Ms. Monigle (admittedly not a witness) who had called the Haverhill Police Department to report the incident, but whom Det. Melanson had reason to believe had a bias, prejudice, or at least inclination to be critical of Ms. Hilchey, and to communicate that critical attitude to her children directly or indirectly. Only after Det. Melanson had taken *Ms. Monigle's* account of the incident did he "confirm" the account with Ms. Monigle's 9-year-old daughter, Ms. Monigle's 5-year-old son, and her children's 9-year-old sleepover friend.

12

Next, neither Detective Melanson, Sergeant Pellot, nor any other member of the Haverhill Police Department conducted any physical inspection or examination whatsoever: there was no investigation of potential physical evidence of any kind (*Exchibit E*, p. 59, ll. 5 – 7), contrary to established procedures (*Exhibit O* at 28-2), and there was no independent testing of the accuracy of the accounts regarding the alleged assault.

Significantly, neither Detective Melanson, Sergeant Pellot, nor any other member of the Haverhill Police Department spoke with the sole known adult witness to the alleged assault: Ms. Hilchey.

A person of "reasonable caution" would not believe that the totality of the foregoing circumstances indicates a reasonable likelihood that Ms. Hilchey committed an assault on the children. A jury could find that Ms. Hilchey was arrested without probable cause.

### Point II

### DEFENDANTS' ARGUMENT THAT PLAINTIFF'S CLAIM RESTS UPON AN "ALLEGED IMPROPER INVESTIGATION" IS A STRAW-MAN AND SHOULD BE PROMPTLY DISMISSED AS INSUFFICIENT.

The defendants claim that they have no liability pursuant to 42 U.S.C. § 1983 on the authority of *Baker v. McCollan*, 443 U.S. 137, 145 (1979), because the "Constitution does not guarantee that only the guilty will be arrested." Defendants' Brief at 4. But *Baker v. McCollan* is careful to point out, in qualification, that:

> [r]espondent [claimant below] was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment. 433 U.S. at 144.

Indeed, on the very page quoted by defendants, Justice Rehnquist explicitly noted that the Constitution requires that "arrest be made only on probable cause," *Baker*, 443

U.S. at 145, and it is a deprivation of this Constitutional right that Plaintiff alleges.

The defendants attempt to transform *Baker* into supporting authority by asserting that "the First Circuit has reaffirmed" the principle that they quote. However, they offer no citation to decisional authority from the Court of Appeals. Moreover, the authority they do cite misses the mark. In *Tomczak v. Town of Barnstable*, 901 F.Supp. 397 (D.Mass. 1995), there was no history of altercations with the defendant; the defendant was interviewed by the police and some of his admissions served as the basis for the complaint, and suggestively-obtained evidence was suppressed at the trial. In *Duca v. Martins*, 941 F.Supp. 1281, 1290 (D.Mass. 1996), Judge Wolf held that there was no showing sufficient to satisfy the requirement in *Franks v. Delaware*, 438 U.S. 154 [1978] and *United States v. Scalia*, 993 F.2d 984, 986-87 [1st Cir. 1993] that a false statement had been intentionally or recklessly made in an affidavit supporting the application for a criminal complaint.

The plaintiff claims not that the defendants conducted an "improper" investigation, but that the decision to arrest her was made before any investigation was conducted at all. The defendants' argument, therefore, consists of nothing more than a straw man and it should be promptly rejected.

### Point III

**THE CUSTOM OR PRACTICE OF THE HAVERHILL POLICE DEPARTMENT WAS TO CREDIT THE STATEMENTS OF THE NEIGHBORS AND TO MINIMIZE THE SIGNIFICANCE OF MS. HILCHEY'S STATEMENTS**

The municipal defendant argues that no "custom or policy" of the City of Haverhill has been shown sufficient to support a finding of liability pursuant to *Monell v. New York City Dep't of Soc. Svces.*, 436 U.S. 658 (1978) and its progeny.

Defendants' motion for summary judgment on this basis must be denied. In the

first instance, if the finder of fact determines that Officer Melanson's report dated September 8, 2002 is true, then he was directed by his superiors to file a complaint, and in fact, prepared it *prior to* interviewing the witnesses. *Exhibit D.* The direction from the superiors identified in the supplemental report includes not only the Acting Police Chief, but also the Patrol Commander, the Street Supervisor, and the Officer in Charge. The direction of these commanding officers suffice to make actions taken in compliance therewith the official policy of the city.

Moreover, Officer Melanson testified that the Haverhill Police Department – on the basis of the history of disputes in the Pear Tree Road neighborhood – had determined that "it was time to do something." *Exhibit E*, Melanson Dep. Tr., p. 96, ll. 1 – 2. The Haverhill Police Department already instituted a number of actions against the plaintiff in response to the neighbors' letter dated September 23, 2001. Members of the Haverhill Police Department had responded to calls from Ms. Hilchey in which she complained of threats against her and her daughter by interviewing the reported perpetrator. *Exhibit E*, Melanson Ex. 4, p. 9. No one interviewed Ms. Hilchey, however, before Officer Melanson, under direction from Sergeant Pellot, applied for the criminal complaint against her.

The foregoing is sufficient to satisfy *Monell* that a custom or policy of the Haverhill Police Department had been adopted toward the Pear Tree Road area on the basis of which (rather than on the basis of any reliable evidence inducing a reasonable belief that Ms. Hilchey committed an assault) the application for a criminal complaint was made, the warrant obtained, and Ms. Hilchey arrested.

### Point IV

### SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY MUST BE DENIED.

The individual defendants assert that they are all entitled to summary judgment on the grounds of qualified immunity. Defendants' Brief at 6 – 9. As set forth more fully below, the applicable standards require the denial of defendants' motion on this basis, as established by their own authority. *See Prokey v. Watkins*, 942 F.2d 67 (1st Cir. 1991)(summary judgment denied to defendants on the basis of qualified immunity at the District Court where issues of material fact remained) cited at Defendants' Brief at 3, 9.

Determinations regarding qualified immunity are subject to a three-part analysis. *Saucier v. Katz*, 533 U.S. 194 (2001); *Wilson v. Layne*, 526 U.S. 603 (1999); *Jennings v. Jones*, 479 F.3d 110, 118 (1st Cir. 2007); *Kelley v. LaForce*, 288 F.3d 1, 6 (1st Cir. 2002); *Abreu-Guzmán v. Ford*, 241 F.3d 69, 73 (1st Cir. 2001).

First, it must be decided whether there has been a Constitutional violation. *Saucier*; *Wilson*; *Jennings*; *Kelley*; *Abreu-Guzmán*; all *supra*. Ms. Hilchey has alleged that her Constitutional rights were violated because she was arrested and charged without probable cause. Second Amended Complaint ¶ 26 (Dckt. No. 20). The right to be free of arrest except on probable cause is a clearly-recognized constitutional right. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Abreu-Guzmán*, 241 F.3d at 73.

Second, it must be determined "whether that right was clearly established at the time of the [official's] alleged violation." *Wilson*, 526 U.S. at 609; *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Kelley*, 288 F.3d at 6. There is no doubt that here, as in *Abreu-Guzmán, id.*, the conclusion is "easily" reached that the right was clearly established at the time of the events at issue, which occurred in 2002.

Third, the qualified-immunity inquiry must address: "whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right." *Jennings*, 479 F.3d at 118, quoting *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 141 (1st Cir. 2001) and citing *Wilson v. City of Boston*, 421 F.3d 45, 52 (1st Cir. 2005). The assessment of what is "objectively reasonable" for the official must be made "in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *McBride v. Taylor*, 924 F.2d 386, 389 (1st Cir. 1991), quoted in *Kelley*, 288 F.3d at 7.

The inquiry regarding this third element of the test for qualified immunity set forth in the controlling authorities is "highly fact specific." *Swain v. Spinney*, 117 F.3d 1, 9-10 (1st Cir. 1997), quoted in *Kelley*, 288 F.3d at 7; *Abreu-Guzmán*, 241 F.3d at 74-75. Thus, although pretrial resolution of the issue of qualified immunity is desirable, it is "sometimes . . . impossible because of a dispute as to material facts." *Kelley, id.*, quoting *Swain*, 117 F.3d at 10.

This same reliance upon the fact-finder's determination of disputed issues is operative in assessing the issue of qualified immunity. *Jennings*, 479 F.3d at 127 (reversing the awarding of judgment n.o.v. after the jury had returned a verdict awarding $301,100 in compensatory damages when the District Court held, contrary to the jury verdict, that qualified immunity applied to the claims). Therefore, the existence of disputed factual issues in the qualified immunity inquiry precludes a finding that the defendant in a § 1983 action is entitled to judgment as a matter of law. *Jennings*, 479 F.3d at 128, n. 24; *Savard v. Rhode Island*, 320 F.3d 34, 42 (1st Cir. 2003)(reversing summary judgment where there had been no factual findings sufficient to address the third prong of the qualified immunity inquiry); *Kelley*, 288 F.3d at 9 (reversing summary

judgment based upon qualified immunity where there was "a material factual dispute as to whether defendants' conduct was reasonable").

The disputed facts set forth above regarding the events of September 7, 2002, the decision to apply for a criminal complaint, and the investigation (such as it was) require disposition by the fact-finder after trial. They bring the present motion squarely within the rule of the applicable authorities that deny, at the summary judgment stage, disposition based upon a finding of qualified immunity. *Kelley*; *Swain*; *Prokey*; *supra.*

If the fact-finder credits the account of Officer Melanson (the first-responder with most significant hands-on involvement), the decision was made early, while Officer Melanson and Sergeant Pellot were still at the scene, to apply for the complaint. Phyllis Monigle testified that they were there no more than fifteen minutes altogether. *Exhibit F*, P. Monigle Dep. Tr., p. 71, l. 14. A jury could find that sometime in those fifteen minutes Sergeant Pellot directed Officer Melanson to apply for a criminal complaint. The jury could find that this direction was premature, precluding an objective finding that any reasonable officer in Officer Melanson's position could have believed that there was probable cause.

If the fact-finder credits the account of Sergeant Pellot, the decision was not yet made. Nonetheless, as shown above, the investigation was faulty, because the witnesses had not yet given any statements pertaining to the events at issue, no one had spoken with Ms. Hilchey, the only adult witness, no physical investigation had been made, and no search for additional witnesses or evidence from the area had been made.

Moreover, if the fact-finder credits Sergeant Pellot on this issue, then the fact-finder might also credit Sergeant Pellot's testimony regarding what Officer Melanson reported when Sergeant Pellot arrived at the scene shortly after Officer Melanson had

18

taken an initial account of the events. Sergeant Pellot testified (*Exhibit J*, Tr., p. 14, ll. 12 – 22):

> A:   . . . I went inside the house, Officer Melanson briefed me on what was going on.
>
> Q:   What did he tell you?
>
> A:   He said that Pamela Hilchey had allegedly ran – driven her car towards some children at a bus stop.

Officer Melanson provided conflicting testimony (*Exhibit E*, p. 14, ll. 10 - 16):

> Q:   Would it surprise you, Detective Melanson, if Sergeant Pellot said that you told him on September 7th that some kids had been scared at a bus stop by Pam Hilchey?
>
> MS. GELLER:   Objection.
>
> A:   I don't recall telling him that. . . .

The materiality of this fact issue pertains to the location of the alleged crime; without a location, there is no probable cause.

There are other material inconsistencies. The Police Incident Report that Officer Melanson prepared and signed and that Ms. Monigle signed stated that the children "were riding their bicycles in the neighborhood. They were at the *end of the development* and S [Ms. Hilchey] drove towards them" (emphasis added). *Exhibit E.*

Officer Melanson testified that there were two "ends" of the development: one at the intersection of Pear Tree Road and Elliott Street, one at the cul-de-sac at the end of Russett Hill Road. *Exhibit E*, p. 67, l. 21 – p. 69, l. 17; Ex. 2. However, none of the witness statements taken later in the day identifies these "ends" as the location where this occurred. The fact-finder could determine that the witness statements were flatly inconsistent with the account given within minutes of the alleged assault regarding the location of the assault, and that the account set forth by Katelyn Monigle is flatly

impossible if the events occurred at the bus stop. The fact finder could determine, therefore, that the application for a criminal complaint on the basis of statements which were contradicted by more immediate information from the reporter and purported victims of the assault is something that no reasonable officer could do.

At the very least, factual issues remain precluding summary judgment on the basis of qualified immunity, in accordance with the standards that the Court of Appeals has repeatedly emphasized. *Jennings; Kelley; Swain; Prokey, supra.*

## Conclusion

For all of the reasons set forth above, the plaintiff, Pamela J. Hilchey, hereby requests this Honorable Court to deny the motion for summary judgment, in its entirety, to make findings regarding those issues as to which there is no triable fact, and for such other and further relief as to the Court seems just.

|  | Respectfully submitted,<br>PAMELA J. HILCHEY, |
|---|---|
| Of Counsel, | By her attorney, |
| */s/ David Miller*<br>David Miller, BBO #641993<br>25 Elm Place<br>Somerville, MA 02143<br>(617) 623-5154 | */s/ Eric P. Finamore*<br>Eric P. Finamore, BBO # 541872<br>Weston Patrick, P.A.<br>84 State Street, Suite 1100<br>Boston, MA 02109<br>(617) 742-9310 |

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on August 13, 2007.

*/s/ Eric P. Finamore*