UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civ. No. 005 CV 10152 NMG

|  |  |
|---|---|
| PAMELA J. HILCHEY, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CITY OF HAVERHILL, *et al.*, | ) ) |
| Defendants. | ) ) ) |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

The plaintiff in the above-captioned action, by her attorneys, hereby submits her Pretrial Memorandum pursuant to Local Rule 16.5 and this Court's Procedural Order.

**1.   CONCISE SUMMARY OF PLAINTIFF'S EVIDENCE**

The plaintiff was arrested on September 7, 2002 for assault with a deadly weapon pursuant to M.G.L. c. 265, § 15B(b). She was later cleared of all charges. The foundation of this lawsuit pursuant to 42 U.S.C. § 1983 is that this arrest was without probable cause.

(a)   *Background of Neighborhood Disputes.*   For several years prior to September 7, 2002, the Haverhill Police Department ("HPD") had responded to calls from the plaintiff and from some of her neighbors in the Haverhill subdivision where they lived, known as the Pear Tree Road area. The neighbors included two married couples, Alicia and Robert Regan and Phyllis and Glen Monigle. Katelyn Monigle, daughter of

Phyllis and Glen Monigle, and the plaintiff's daughter, Lindsey, were in the same grade at school, but there had been an altercation between them in which Katelyn had apparently pushed Lindsey.

In September, 2001, the Regans and the Monigles were among those who subscribed to a letter sent to HPD Chief Brighi. The letter reflected complaints about the plaintiff, with some associated complaints about her husband, who was a police officer at the HPD. There was also a meeting with HPD Chief Brighi.

The HPD undertook several measures to meet the concerns expressed in the letter and at the meeting. These included:

- the placement in the Pear Tree Road neighborhood of a radar device that informed motorists of their speed as they approached it;

- the placement in the Pear Tree Road neighborhood of signs indicating that children were present there;

- HPD's direction to Officer Hilchey that he was to leave his police revolver in his locker at the HPD station and that he was not to bring it home with him to One Cortland Road in the Pear Tree Road neighborhood;

- HPD's direction, by Captain Ratte, the patrol commander, that any call to the HPD for assistance coming from the Pear Tree Road neighborhood would be responded to by a a regular patrol officer who would be accompanied by the HPD street supervisor on duty; and

- a meeting in the neighborhood, at the home of one of the residents of the Pear Tree Road neighborhood, at which HPD Sergeant Arahovites explained that the HPD was addressing the concerns expressed to HPD Chief Brighi and that the Hilchey family would not receive preferential treatment from the HPD because Ronald Hilchey was a police officer in the HPD.

Shortly after the meeting, on October 5, 2001, the HPD responded to three separate calls to the Pear Tree Road area. They all involved plaintiff, and included one complaint by the Regans that the plaintiff had endangered their daughter when she drove

through the Pear Tree Road area.

During the summer of 2002, the plaintiff herself called the HPD to report incidents at her home in the Pear Tree Road neighborhood. Someone stole her lawn ornament and someone had thrown eggs at her house. On September 4, 2002, the plaintiff sent a letter to the Mayor of Haverhill, John J. Guerin, Jr., regarding her dissatisfaction with some of the interactions she had with the HPD in the Pear Tree Road neighborhood. The post card receipt for the letter, which was sent by certified mail, shows that it was signed for on Friday, September 6, 2002.

(b) *The events of September 7, 2002.* On Saturday morning, September 7, 2002, the plaintiff drove to a local lake for a walk. She saw a number of children at the bus stop on the corner of Pear Tree Road and Elliot Street, where they had parked their bicycles and were dancing about when motorists passed along Elliot Street.

After her walk, the plaintiff drove toward her home on Cortland Road just off Pear Tree Road. Just prior to entering her driveway, she recalled that she had forgotten to stop at Dunkin' Donuts to pick up a few bagels for home. Therefore, instead of turning left off of Pear Tree Road into the driveway of her residence at One Cortland Road, she continued straight along Pear Tree Road, where she saw some of the children who were earlier at the bus stop at the intersection of Pear Tree Road and Elliot Street. These included the Monigles' children Katelyn and Matthew.

The plaintiff drove past the children on Pear Tree Road, noting that they appeared to be huddling and conversing while looking at her. She returned from Dunkin' Donuts with the bagels and continued her usual activities until that Saturday evening, when she was arrested on a warrant for three counts of assault with a dangerous weapon, G.L. c.

265, § 15B(b), namely an automobile, booked at the HPD station, and released.

The complaining witnesses were the children of the Monigles: Matthew Monigle, Katelyn Monigle, and Katelyn's friend who was visiting on a sleepover, Amanda Bastarache.

(c)   *The Decision of the Haverhill Police Department to Arrest.* The events leading up to the issuance of the warrant occurred after the plaintiff drove past the children on Pear Tree Road on her way to get bagels at Dunkin' Donuts.

Phyllis Monigle called HPD at approximately 9:10 A.M. on September 7, 2002 and stated that the children had reported to her that the plaintiff had come through the subdivision and "came straight at the kids," including Kevin Regan. Ms. Monigle also reported she was not a witness to the event.

Officer Melanson of the HPD responded to the call. In accordance with the policy in place at the HPD, Officer Melanson requested the dispatcher to advise the street supervisor, Sergeant Pellot, that he should also respond to the call by coming to 49 Pear Tree Road.

Officer Melanson arrived first and immediately began to interview Phyllis Monigle. When Sergeant Pellot arrived shortly therafter, Officer Melanson briefed him regarding what he had learned to that point, telling him that Ms. Hilchey had driven at some kids at a bus stop. While Officer Melanson continued to interview Phyllis Monigle and, later, the children who were the complaining witnesses, Sergeant Pellot called the HPD headquarters and reported what was occurring to the Officer in Charge, Lieutenant Dorr.

Sergeant Pellot directed Officer Melanson to apply for a criminal complaint

4

against Ms. Hilchey for assault with a dangerous weapon, G.L. c. 265, § 15B(b). Sergeant Pellot also advised Officer Melanson that the witnesses were to make statements at HPD headquarters, and that Detectives Dawkins and Dekeon were to assist him. Finally, Officer Melanson was advised that the incident that morning had been reported "up the chain of command" to Lieutenant Dorr, Captain Ratte, and Acting Chief of Police Parolisi.

Officer Melanson completed the Incident Report on the scene. It was signed by Phyllis Monigle and states that the children (Katelyn Monigle, Matthew Monigle, and Amanda Bastarache, but not Kevin Regan) were riding their bicycles at the end of the development when Ms. Hilchey drove her car at them. The report says that Ms. Hilchey returned to her home, which was almost directly across Pear Tree Road, after the alleged assault.

Although Ms. Hilchey was home and within a short walk from the Monigles' home, neither Officer Hilchey nor Sergeant Pellot spoke with Ms. Hilchey, nor did either of them take any other step to determine whether she was available to be interviewed or give a statement. They conducted no physical examination. They did not inspect the location of the alleged assault. They made no inquiries of other potential witnesses, nor did they attempt to determine whether there were any other witnesses. In short, there was no other investigation than the interview with Ms. Monigle and the complaining witnesses, the eldest of which was nine years old. Moreover, at no other time was there any such investigation by the HPD.

Officer Melanson and Sergeant Pellot then left Pear Tree Road at about 9:30 A.M.
Phyllis Monigle testified the Detective Dekeon called her to come to the HPD

5

headquarters with Katelyn and Matthew to give statements to the police. Detective Dekeon began to take Katelyn Monigle's statement, with her mother present, at 2:15 P.M.

Twenty minutes later, at 2:35 P.M., Amanda Bastarache and her mother, Amy Bastarache, began to give Amanda's statement to Detective Dawkins and Officer Melanson.

After Amanda Bastarache gave her statement, Officer Melanson took about five minutes to get Matthew Monigle's statement.

Officer Melanson then collected the statements that were given by the three witnesses. He made out an application for a criminal complaint. After completing all necessary documentation for the application, he left all of the materials with Lieutenant Dorr. Shortly thereafter, Officer Melanson completed his shift, at 4:30 P.M., and left the police station.

Lieutenant Dorr reviewed the materials that Officer Melanson left. He sent them to Haverhill District Court, where a warrant was issued. No member of the HPD noted any of the inconsistencies among the statements that the witnesses gave (including what Phyllis Monigle and the witnesses said that is reflected in the Incident Report). No member of the HPD conducted any investigation into the inconsistencies. No member of the HPD conducted any investigation of any kind from 9:30 A.M. until 2:15 P.M., when Katelyn and Phyllis Monigle began to give Katelyn's statement to Detective Dekeon at the HPD headquarters.

On Wednesday, September 11, 2002, Kevin Regan gave a statement to Detective Dekeon at HPD headquarters, on the basis of which Ms. Hilchey was charged with a

fourth count of assault with a dangerous weapon, G.L. c. 265, § 15B(b).

Plaintiff's expert will testify regarding the failure of the HPD to develop probable cause prior to proceeding with the application to Haverhill District Court and the arrest and prosecution of Ms. Hilchey. Plaintiff's expert will refer to acceptable police procedure and the failure of the HPD to engage in it.

(d)  *Damages.*  Ms. Hilchey was arraigned on Monday, September 9, 2002. A restraining order was issued directing her to have no contact with the Pear Tree Road neighbors. Ms. Hilchey, as a result of the restraining order, and fearful that the neighbors would complain that she had violated, never stayed again in her home at One Cortland Road. The Hilcheys sold their house on One Cortland Road in October, 2002 and moved away from the neighborhood.

In July, 2003, three of the counts against Ms. Hilchey against Amanda Bastarache, Matthew Monigle, and Kevin Regan were dismissed by the prosecutor *nolle prosequi*. The sole remaining count, regarding Katelyn, was tried to a jury, who found Ms. Hilchey not guilty of the offense charged.

In the meantime, the plaintiff suffered economic damages, including the cost of defending herself against the felony charges, and substantial non-economic damages, including fear, humiliation, mental anguish and suffering because of the four felony charges.

2. **FACTS ESTABLISHED BY PLEADING OR STIPULATION**

    1. The plaintiff, Pamela J. Hilchey, resided at One Cortland Road, Haverhill, MA at all times relevant to the events leading up to her arrest on September 7, 2002.

7

2. The plaintiff's husband, Ronald Hilchey, was, at all relevant times, a police officer employed by HPD.

3. Phyllis and Glen Monigle are married and the parents of Katelyn Monigle and Matthew Monigle. The Monigles lived, at all relevant times, at 49 Pear Tree Road.

4. Alicia and Robert Regan are married and the parents of Kevin Regan and his sister Caitlyn. The Regans lived, at all relevant times, at 45 Pear Tree Road.

5. Gary O. Melanson was at all relevant times a police officer with the HPD. On September 7, 2002, he was on duty as a regular patrol officer; during the regular work week he is a detective.

6. John J. Guerin, Jr. was Mayor of the City of Haverhill in September, 2002.

7. Kim J. Parolisi was Acting Chief of Police of the HPD in September, 2002. He was at all relevant times employed by the HPD.

8. Lance A. Dawkins has, at all relevant times, been employed by the HPD. In September, 2002, he was a detective.

9. Alan Ratte has, at all relevant times, been employed by the HPD. In September, 2002, he was a captain and the patrol commander.

10. John Arahovites has, at all relevant times, been employed by the HPD. In September, 2002, he was a sergeant.

11. Victor Pellot has, at all relevant times, been employed by the HPD. In September, 2002, he was a sergeant.

12. William Leeman has, at all relevant times, been employed by the HPD. In

September, 2002, he was a lieutenant.

13. George Dekeon, Jr. has, at all relevant times, been employed by the HPD. In September, 2002, he was a detective.

14. On September 7, 2002, the plaintiff was charged with three counts of assault with a dangerous weapon under Mass. Gen. Laws, c. 265, §15B(b).

15. On September 19, 2002, a complaint containing a fourth count against the plaintiff under Mass. Gen. Laws, c.265, §15B(b) was issued.

16. Prior to trial, three of the four counts against the plaintiff were voluntarily dismissed by the Commonwealth.

17. On August 1, 2003, the plaintiff was found not guilty by a jury in the Lawrence District Court on the single charge that went to trial.

**3. CONTESTED ISSUES OF FACT**

The plaintiff contends that the facts will support the following findings:

1. The defendant Haverhill police officers involved in the arrest of the plaintiff did not have a reasonable basis upon which to believe that she had committed an offense which properly subjected her to arrest.

2. The decision on the part of the defendant Haverhill police officers and/or other municipal officials to arrest the plaintiff was made on the basis of malice towards the plaintiff, and grounds extraneous to whether probable cause actually existed.

3. The defendant Haverhill police officers failed to adhere to the applicable standards for investigations and applications for criminal complaints with regard to the plaintiff on September 7, 2002.

    4.    On September 7, 2002, before any witness statements were taken or any investigation was performed, defendants Captain Ratte and/or Sergeant Pellot decided that the plaintiff should be arrested and directed defendant Officer Melanson to apply for a criminal complaint against the plaintiff.

    5.    The defendant Haverhill police officers failed to conduct an adequate investigation either before or after they decided to seek an arrest warrant.

    6.    Defendants Mayor Guerin and Acting Chief Parolisi were aware of, and/or authorized the arrest of the plaintiff without probable cause.

    7.    As a result of her arrest, the plaintiff suffered economic damages, including the cost of defending herself against the felony charges.

    8.    As a result of her arrest, the plaintiff suffered substantial non-economic damages, including fear, humiliation, mental anguish and suffering.

**4.    JURISDICTIONAL QUESTIONS**

    None.

**5.    QUESTIONS RAISED BY PENDING MOTIONS**

    1.    *Plaintiff's Motion to Compel Discovery.* Plaintiff contends that she is entitled to additional documents and witnesses relating to the claim against the defendant City of Haverhill. The grounds for plaintiff's contention in this regard are set forth in her motion which is pending before the Court.

    2.    *Defendant's Motion to Bifurcate.* Defendant has asked this Court to bifurcate the City's liability from that of the individual police officers; plaintiff has opposed that request.

    3.    *Summary Judgment.* The defendants have moved for summary judgment

as to all claims; plaintiff has opposed that motion, which is pending before the Court.

**6.   ISSUES OF LAW**

1.   *Arrest Without Probable Cause.*  The plaintiff contends that her arrest on September 7, 2002, violated her rights under the Fourth Amendment of the U.S. Constitution, which requires that no warrant for an arrest may be made without probable cause.  *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Abreu-Guzmán v. Ford*, 241 F.3d 69, 73 (1st Cir. 2001).  Police officers can be liable for seeking a criminal complaint if they lacked probable cause.  *Carey v. City of Fall River*, 870 F.2d 40 (1st Cir. 1989).  Application for a criminal complaint without probable cause is itself actionable pursuant to § 1983.  *Losch v. Borough of Parkesburg*, 736 F.2d 903 (3d Cir. 1984); *Woodley v. Nantucket*, 645 F.Supp. 1365 (D.Mass. 1986).

A criminal assault founded upon an immediately threatened battery requires "proof of intent to cause apprehension," and not merely "proof that the action which constitutes menacing conduct be intentional."  *Commonwealth v. Musgrave*, 38 Mass.App.Ct. 519, 524, *aff'd*, 421 Mass. 610, 611 (1996).  Probable cause did not exist on September 7, 2002, because there was no "reasonable likelihood" – indeed, no evidence – that Ms. Hilchey intended to cause apprehension in the children.

An arrest without probable cause violates the plaintiff's rights under both the U.S. Constitution and the Massachusetts Constitution, and entitles the plaintiff to compensation under 42 U.S.C. 1983 and Mass. Gen. Laws, c.12.

2.   *Municipal Liability.*  The City of Haverhill is liable for the violation of the plaintiff's constitutional rights, because that violation was committed pursuant to an

official policy of the City. *Monell v. New York City Dep't of Soc. Svces.*, 436 U.S. 658 (1978).

3. *Plaintiff's Damages*. The plaintiff is entitled to recover money damages to compensate her for the violation of her federal and state constitutional rights. *Farrar v. Hobby*, 505 U.S. 103 (1992); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986); *Carey v. Piphus*, 534 U.S. 247 (1978); *Colon v. Roman-Abreu*, 438 F.3d 1 (1st Cir. 1983); *Santiago v. Fenton*, 891 F.2d 373 (1st Cir. 1989).

The plaintiff is entitled to recover punitive damages for the reckless, callous or intentional disregard of her constitutional rights. 42 U.S.C. §1983; *Smith v. Wade*, 461 U.S. 30 (1983).

The plaintiff is entitled to an award of reasonable attorney's fees. 42 U.S.C. §1983; Mass. Gen. Law, c. 12, §11I.

7. **REQUESTED AMENDMENTS TO THE PLEADINGS**

Plaintiff has requested no amendments the pleadings.

8. **ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION**

Defendants have moved both to bifurcate the trial and for summary judgment on all issues against all defendants. There has been no disposition by the Court on these motions. Plaintiff has opposed both motions.

In addition, the plaintiff has moved this Court for an order compelling production of discovery relating to the claims against the municipality. The Court has not acted on this motion, although the defendants have, on January 24, 2008 made an incomplete and tardy production of certain documents.

In the event that the Court allows any relief regarding either of these motions,

Plaintiff requests a reasonable continuance of the trial so as to prepare for it in light of such disposition.

9. **PROBABLE LENGTH OF TRIAL**

Three to four full trial days. This is to be a jury trial.

10. **NAMES OF WITNESSES TO BE CALLED AT TRIAL**

Plaintiff intends to call the following witnesses at the trial:

1. Pamela J. Hilchey, 4104 Navajo Circle, Rock Hill, SC.
2. Lindsey Hilchey, 4014 Navajo Circle, Rock Hill, SC.
3. Victor M. Pellott, Haverhill Police Department, Haverhill, MA
4. Kim J. Parolisi, Haverhill Police Department, Haverhill, MA
5. Lance A. Dawkins, Haverhill Police Department, Haverhill, MA
6. Alan Ratte, Haverhill Police Department, Haverhill, MA
7. Gary Melanson, Haverhill Police Department, Haverhill, MA
8. George Dekeon, Jr., Haverhill Police Department, Haverhill, MA
9. William Leeman, Haverhill Police Department, Haverhill, MA
10. James A. Williams, Ph.D., Cherry Hill, NJ (liability expert).
11. Stephen Brighi, Haverhill Police Department, Haverhill, MA
12. John Arahovites, Haverhill Police Department, Haverhill, MA
13. John J. Guerin, Haverhill Police Department, Haverhill, MA
14. Phyllis Monigle, Haverhill Police Department, Haverhill, MA
15. Glen Monigle, Pear Tree Road, Haverhill, MA
16. Kaitlyn Monigle, Pear Tree Road, Haverhill, MA
17. Matthew Monigle, Pear Tree Road, Haverhill, MA

18. Robert Regan, Pear Tree Road, Haverhill, MA

19. Alicia Regan, Pear Tree Road, Haverhill, MA

20. Kevin Regan, Pear Tree Road, Haverhill, MA

21. Amanda Bastarache, Claremont, New Hampshire.

22. Ronald Hilchey, Haverhill Police Department, Haverhill, MA

**11. PLAINTIFF'S EXHIBITS**

Plaintiff expects to offer the following documents and things as trial exhibits:

1. Photographs of Pear Tree Road and Cortland Road, Haverhill, Massachusetts.

2. Letter from plaintiff Pamela J. Hilchey to Mayor John Guerin, along with return receipt dated September 6, 2002, attached as Exhibit A to the Complaint,

3. Billing records, law office of Scott Gleason.

4. Curriculum vitae of James A. Williams, Ph.D.

5. The Haverhill Police Department Incident Reports that were marked as Exhibit 4 to the deposition of Gary I. Melanson on March 28, 2007, itemized as follows by date:

    i. September 10, 1995;

    ii. September 19, 1999;

    iii. December 13, 1999;

    iv. June 19, 2000;

    v. June 20, 2000;

    vi. August 2, 2000;

    vii. October 5, 2001;

       viii.    October 30, 2001;

       ix.    August 8, 2002; and

       x.    September 2, 2002.

6.    Print-outs showing incidents and/or calls to Haverhill Police Department from Pear Tree Road.

7.    Haverhill Police Department Incident Report dated September 7, 2002.

8.    Haverhill Police Department Narrative Report by Gary Melanson, dated September 7, 2002.

9.    Haverhill Police Department Narrative taken from Katelyn M. Monigle, dated September 7, 2002.

10.    Sound recordings and/or transcripts of three telephone calls recorded by the Haverhill Police Department on September 7, 2002.

11.    Letter to Haverhill Police Chief Brighi from Pear Tree Road residents, dated September 23, 2001.

12.    Haverhill Police Department Narrative taken from Amanda Bastarache, dated September 7, 2002.

13.    Haverhill Police Department Narrative taken from Matthew Monigle, dated September 7, 2002.

14.    Haverhill Police Department Narrative taken from Kevin Regan, dated September 11, 2002.

15.    Arrest warrant for Pamela Hilchey charging assault with a dangerous Weapon, G.L. c. 265, § 15B(b).

16.    Haverhill Police Department Manual.

17. Haverhill Police Department Policies and Procedures.

18. Haverhill Police Department Code of Ethics.

19. Supplemental Report by Gary I. Melanson (Melanson Ex. 6), dated September 8, 2002.

20. Supplement Report by Det. George Dekeon, Jr.

21. Application for Complaint dated September 7, 2002.

22. Application for Complaint dated September 19, 2002.

23. Melanson Deposition Exhibit 1: printout of map of Route 51 of the Merrimack Valley Regional Transit Authority.

24. Melanson Deposition Exhibit 2: printout of Mapquest map of the Pear Tree Road area, with initialed markings.

25. Melanson Deposition Exhibit 3 (same as Regan Deposition, Exhibit 1): printout of satellite image of Pear Tree Road area, with manuscript markings.

26. Letter dated September 4, 2002 from P. Hilchey to Mayor John J. Guerin, Jr.

27. Complaint, Haverhill District Court, *Commonwealth v. Hilchey*, No. 0238CR01669, September 7, 2002.

28. Haverhill Police Department Booking Sheet, September 7, 2002.

29. Complaint, Haverhill District Court, *Commonwealth v. Hilchey*, No. 0238CR01669, September 19, 2002.

30. Tape recording and/or transcript of trial, *Commonwealth v. Hilchey*, Lawrence District Court, No. 0238CR01669.

31. Certified copies of the records of Lawrence District Court, *Commonwealth*

*v. Hilchey*, No. 0238CR01669.

Plaintiff respectfully reserves the right to supplement the foregoing lists of witnesses and exhibits prior to trial, on the basis of evidence identified by the defendants, or as otherwise permitted by this Court.

In addition, plaintiff notes that discovery motions are outstanding and that this Court may order production of additional documents, witnesses and evidence as a result of such motions, and therefore the plaintiff reserves the right to supplement the foregoing lists to the extent that additional evidence is discovered hereafter.

By plaintiff's attorney,
*/s/ Eric P. Finamore*
Eric P. Finamore, BBO No. 541872
Weston Patrick, P.A.
84 State Street, Suite 1100
Boston, MA 02109
(617) 742 – 9310

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on January 25, 2008.

*/s/ Eric P. Finamore*