United States District Court
District of Massachusetts

```
_____
                                 )
Pamela J. Hilchey,               )
          Plaintiff,             )
                                 )
       v.                        )    Civil Action No.
                                 )    05-10152-NMG
City of Haverhill, et al.,       )
          Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

GORTON, J.

The plaintiff alleges that she was arrested and prosecuted without probable cause in violation of her state and federal civil rights.  The defendants move for summary judgment.


I.  **Background**

The plaintiff, Pamela Hilchey ("Hilchey") was arrested on September 7, 2002, on charges of assault with a deadly weapon after an incident in which she allegedly drove her car "at" three children, all under the age of ten years, who lived in her neighborhood.  She was subsequently acquitted of all charges. She alleges that there was not probable cause to believe that she had committed the alleged assault and, more broadly, that the entire episode resulted from a personal vendetta against her and her husband carried out by the Haverhill Police Department.  She filed suit in this Court on January 26, 2005.  Her Second Amended

-1-

Complaint alleges that her arrest and prosecution without probable cause constitute violations of 42 U.S.C. § 1983 and M.G.L. c. 12 §§ 11H and I ("the Massachusetts Civil Rights Act" or "the MCRA").

The defendants are the City of Haverhill ("the City"), the Mayor of the City, John J. Guerin, Jr. ("Guerin" or "the Mayor"), the Chief of Police, Steven Brighi ("Brighi"), the Acting Chief of Police, Kim J. Parolisi, ("Parolisi"), a police captain, Alan Ratte ("Ratte"), two police detectives, Lance Dawkins ("Dawkins") and George DeKeon, Jr. ("DeKeon"), two police sergeants, John P. Arahovites ("Arahovites") and Victor M. Pellot ("Pellot"), a police lieutenant, William Leeman ("Leeman") and the investigating police officer, Gary J. Melanson ("Melanson"). Each of the eleven defendants is alleged to have violated § 1983 and the MCRA.  This Court dismissed the MCRA claim against the City on July 26, 2006, because municipalities cannot be sued under that statute as a matter of state law.  Before the Court is the defendants' motion for summary judgment on all remaining counts.

On the morning of September 7, 2002, Katelyn Monigle, Matthew Monigle and Amanda Bastarache (collectively "the children") were riding their bicycles in the streets of the neighborhood they shared with Hilchey.  Hilchey drove by, allegedly passing at high speed within one foot of the children

-2-

and causing them to fear that she intended to hit them.  The children went into the Monigles' house, told Mrs. Monigle what had happened and she called the police.  Officer Melanson responded to the call and, after interviewing Mrs. Monigle and the children and taking written statements from the children at the police station that afternoon, applied for a warrant for Hilchey's arrest.  Hilchey was arrested that evening without being interviewed.

In addition to the incident of September 7, 2002, the parties agree that the police had been called to Hilchey's neighborhood in connection with several prior incidents.  Hilchey alleges first that, with that history in mind, the police had decided to take action against her on September 7th irrespective of the facts of the matter.  She also alleges that her interactions with the police reveal an institutional policy of harassment against her and her husband.[1]

## II.  **Analysis**

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and

_____

[1]At a pretrial conference held on January 30, 2008, the plaintiff's counsel made reference to a more general municipal policy of permitting police officers to carry out personal vendettas against citizens.  Either policy, if proven, would support a finding of municipal liability but, for simplicity, the Court confines itself to treatment of the specifically alleged policy.

to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)(quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists

-4-

and the moving party is entitled to judgment as a matter of law,
summary judgment is appropriate.

**B.    Section 1983 and the MCRA**

The MCRA is analogous to § 1983 in nearly every
respect.  <u>Duarte</u> v. <u>Healy</u>, 405 Mass. 43 (1989).  It provides a
cause of action to any person deprived of constitutional,
federal, or state civil rights "by threats, intimidation, or
coercion".  M.G.L. c. 12 § 11H.  There are, however, two notable
differences between the federal and state statutes: 1) the
plaintiff in an MCRA suit need not prove state action and 2)
municipalities are not "persons" for MCRA purposes and so may not
be sued under it.  <u>Kelley</u> v. <u>LaForce</u>, 388 F.3d 1, 11 (1st Cir.
2002).  These differences are of no moment here: the first does
not apply because the defendants are state actors and the second
was addressed when this Court allowed the City's motion to
dismiss the state-law count against it.

**C.    Probable Cause**

The defendants' first contention is that there was probable
cause to believe that Hilchey had committed the crime for which
she was arrested.  If probable cause existed, there was no
deprivation of any constitutional right.  <u>Roche</u> v. <u>John Hancock
Mut. Life Ins. Co.</u>, 81 F.3d 249, 254 (1st Cir. 1999).  The
children's statements to Officer Melanson when he interviewed
them described conduct that constituted the offense charged and

-5-

he applied his long experience as a police officer in determining that they were credible witnesses. Furthermore, the fact that the same statements were presented to a neutral magistrate who, in turn, concluded that they justified the issuance of an arrest warrant, strengthens their position.

The plaintiff responds that, at the time the decision to seek a warrant was made, the facts supporting the arrest had not yet been developed. She points to the fact that the investigation into the incident continued after the decision was made to arrest her and concludes that the decision was made without regard to the facts of the incident in question. She implicitly denies the defendants' argument that the existence of the warrant disposes of the inquiry into probable cause.

Each party makes valid points. If probable cause existed at the time of the arrest, Hilchey's constitutional rights were not violated, see Roche, and her entire case must be dismissed. However, the inquiry into whether probable cause existed does not turn primarily upon the issuance of the warrant, nor does such an issuance by a neutral magistrate conclusively demonstrate that probable cause existed to support it. Malley v. Briggs, 475 U.S. 335 (1986). Furthermore, provided that Hilchey has alleged a violation of a constitutional right (as she clearly has in charging that she was arrested without probable cause, Beck v. Ohio, 379 U.S. 89 (1964)) the officers are entitled at most to

-6-

qualified immunity for their actions.  The qualified immunity test is designed to strike the proper balance between protecting plaintiffs' rights and "avoid[ing] excessive disruption of government".  <u>Malley</u>, 475 U.S. at 341.  Finally, qualified immunity protects only individual defendants and not the City as a municipal defendant.  <u>Owen</u> v. <u>City of Independence</u>, 445 U.S. 622 (1980).

The question of whether probable cause existed, if it is to be answered directly, is a question of fact for the jury. <u>Woodley</u> v. <u>Town of Nantucket</u>, 645 F. Supp. 1365, 1370 (D. Mass. 1986).  That is, if (1) qualified immunity does not shield all defendants from suit and (2) genuine issues of fact remain that call into question whether probable cause was present, those facts must be resolved at trial.  Before asking the second question, however, the issue of qualified immunity must be addressed.

### D.  Qualified Immunity

#### 1.  The Standard

The Supreme Court and the First Circuit Court of Appeals have set forth a preferred procedure for the analysis of qualified immunity in § 1983 claims.  First, the Court must decide whether the plaintiff has "alleged the deprivation of an actual constitutional right."  <u>Abreu-Guzman</u> v. <u>Ford</u>, 241 F.3d 69, 73 (1st Cir. 2001) (<u>citing</u> <u>Wilson</u> v. <u>Layne</u>, 526 U.S. 603 (1999)).

Second, the Court must determine whether the right was "clearly established at the time of the alleged violation". <u>Abreu-Guzman</u>, 241 F.3d at 73. Finally, if those two questions are answered in the affirmative, the Court turns its attention to the specific conduct alleged and decides

> whether an objectively reasonable officer, performing discretionary functions, would have understood that his or her conduct violated that clearly established constitutional right.

<u>Id.</u> (<u>citing</u> <u>Harlow</u> v. <u>Fitzgerald</u>, 457 U.S. 800, 818-19 (1982).

In this case, as in <u>Abreu-Guzman</u>, the first two questions may be disposed of quickly. The central allegation of Hilchey's complaint is that she was arrested without probable cause. If proven, that would constitute a perfectly clear violation of the Fourth Amendment, established at least since the Supreme Court's holding over 40 years ago in <u>Beck</u> v. <u>Ohio</u>, 379 U.S. 89 (1964). The Complaint also alleges violations of the First and Fourteenth Amendments in the same incident but the Fourth Amendment claim is the central allegation and the sole focus of the parties' submissions with regard to summary judgment.

### 2.    The Specific Conduct

Turning to the specific conduct at issue, the first point to emphasize is that our inquiry is an objective one. The subjective beliefs of the individual defendants, from Officer Melanson to Mayor Guerin, are "simply irrelevant". <u>Crawford-El</u> v. <u>Britton</u>, 523 U.S. 574, 588 (1998). Provided that "the

presence of probable cause is at least arguable", it is objectively reasonable for officers to seek an arrest warrant. <u>Abreu-Guzman</u>, 241 F.3d at 73.

The burden of proof for this inquiry is somewhat confusing. Because the Court is evaluating a motion for summary judgment the underlying facts must be viewed in the light most favorable to the non-moving party.  When the undisputed facts are identified, however, the question becomes whether probable cause is "at least arguable", a standard much more congenial to the defendants.

Hilchey does not contest the following brief summary of the facts.  Shortly after the alleged incident on the morning of September 7, 2002, the police were called to Pear Tree Lane in Haverhill, Massachusetts.  Officer Melanson responded to that call and interviewed the three children who alleged that Hilchey had driven her car "at" them. That afternoon, after the children had given written statements at the police station, the police applied to the Haverhill District Court for a warrant for Hilchey's arrest and the warrant was issued.

### 3.    Hilchey's Allegations

In her opposition to the defendants' motion for summary judgment Hilchey asserts several facts that she alleges preclude summary judgment.  Each will be discussed in turn.

### i.    Timing of the Charge

Hilchey alleges first that the decision to file charges was

made before the supporting facts were developed.  Officer
Melanson first spoke with the children during the morning of
September 7, 2002, and then took written statements from them in
the afternoon.  Hilchey alleges that the decision to file charges
was made in the morning by Melanson's superiors.  Because the
written statements were taken only after the decision to charge
Hilchey, she alleges that the record was incomplete and therefore
that probable cause did not exist.  She alleges further that the
continued investigation was "an attempt to spin, fabricate, or
select information" for the warrant application.

The attribution of motives is irrelevant to the defense of
qualified immunity.  <u>Crawford El</u>, 523 U.S. at 588.  This Court
need not concern itself with what mental processes underlay the
decision to seek a warrant for Hilchey's arrest.  The question
before us is simply whether there was probable cause to believe
that Hilchey had committed a crime at the time the police sought
a warrant for her arrest.  Even granting that the decision to
apply for the warrant was made before the written witness
statements were taken, it is "at least arguable" that Melanson's
credence in the children's oral statements (made in the morning),
and his superiors' trust in his judgment, was reasonable and
supplied the necessary probable cause.

### ii.  Who Made the Decision

Hilchey alleges that the decision to seek the warrant was

-10-

made not by Melanson but by his superiors and not based on any objective analysis of the facts of the incident but as a pattern of harassment against her and her husband.  Those allegations, even if substantiated, are irrelevant to the objective determination, for qualified immunity purposes of whether probable cause existed to support the application for a warrant for Hilchey's arrest.  As noted above,

> a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated.  Evidence concerning the defendant's subjective intent is simply irrelevant to the defense.

Crawford-El, 523 U.S. at 588.  Therefore, even if all of Hilchey's allegations of improper motive and personal vendetta of multiple members of the Haverhill Police Department are true, they do not rebut the defense of qualified immunity.  The qualified immunity inquiry is limited to the objective facts determinative of probable cause.

### iii. Inadequate Investigation

It is instructive to review the final paragraph of the section in the plaintiff's opposition discussing facts left in dispute by the summary judgment record.  She asserts that a jury could conclude that

> (i) the decision to charge Ms. Hilchey was not made on the basis of the "investigation"; (ii) Officer Melanson was under orders to do what he did; (iii) the investigation into the incident of September 7, 2002 was of secondary importance to the decision to arrest Ms. Hilhey; (iv) the presence of an objectively-determined basis for probable

> <u>cause</u> had little or nothing to do with that; so (v)
> inconsistencies in the information presented in the course
> of the investigation were irrelevant. (emphasis added).

Even if a reasonable jury were to reach all of those conclusions,
none but the underlined clause is relevant to the determination
of qualified immunity.  Whatever shortcomings Hilchey perceives
in the investigation carried out by Melanson (principally his
failure to interview the only adult witness to the alleged
incident or to attend to inconsistencies among the children's
statements) they have nothing to do with the objective presence
or absence of probable cause arising out of the evidence in his
possession.  Contrary to Hilchey's allegation that the existence
of probable cause was irrelevant to the defendants' decision to
charge her, it is the only question before this Court at this
time.

### 4.  Intent

Hilchey's opposition, in addition to asserting that the
defendants charged her for improper reasons, argues that there
was no probable cause to believe that she intended to cause
bodily harm or apprehension in the children, an essential element
of the crime of assault.  The children stated that her conduct
did, in fact, cause them apprehension and described her conduct
as driving within one foot of them at high speed.  A reasonable
police officer could conclude, based on that evidence, that there
was probable cause to believe that the requisite intent existed.

The plaintiff emphasizes the youth of the alleged victims and the history of chronic disputes in the neighborhood which she characterizes as evidence that the children were lying.  A reasonable officer could view the history of rancor in particular as lending credibility to the allegation of an assault, however. Because the test for qualified immunity is so forgiving (whether probable cause was "at least arguable", Abreu-Guzman, 241 F.3d at 73), the plaintiff's legal argument fails.

### 5.  Conclusion

The plaintiff's opposition to the defendants' assertion of qualified immunity rests almost entirely upon allegations of malice.  As noted above, such allegations, although they may be relevant to a plaintiff's case in chief, and notwithstanding the fact that in ruling on the defendants' motion for summary judgment the Court resolves all factual disputes in Hilchey's favor, do not serve to rebut an affirmative defense of qualified immunity.  Crawford-El, 523 U.S at 588.  Regardless of Hilchey's theory of what truly motivated the decision to arrest her, this Court, in evaluating a defense of qualified immunity, must confine its attention to the objective facts of the incident. Id.  Even viewed in the light most favorable to the plaintiff, those facts would lead a reasonable officer to believe that probable cause existed.  Hilchey's legal argument, that there was no evidence of intent, is unpersuasive. Therefore, the individual

-13-

defendants are entitled to qualified immunity and their motion
for summary judgment on those grounds will be allowed.

### E.   Municipal Liability

#### 1.   Legal Standard

A municipality may be held liable in a § 1983 suit for the
actions of its employees only if those actions were carried out
pursuant to "official policy" or "custom". <u>Monell</u> v. <u>New York
City Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978). A single
decision made by an official wielding sufficient authority may,
under certain circumstances, constitute such a policy and subject
the city to liability. <u>Pembaur</u> v. <u>City of Cincinnati</u>, 475 U.S.
469, 480-81 (1986).

The plaintiff has, in support of her motion to compel
discovery of other legal actions brought against the City,
referred to a recent decision of the First Circuit Court of
Appeals indicating that a single incident may not prove municipal
policy, <u>Whitfield</u> v. <u>Melendez-Rivera</u>, 431 F.3d 1, 12 (1st Cir.
2005) (citing <u>Fabiano</u> v. <u>Hopkins</u>, 352 F.3d 447, 452). In her
effort to obtain further discovery, the plaintiff has, however,
ironically, raised the bar of her burden of proof higher than
need be because the cases she cites hold only that *absent any
other evidence of policy*, a single incident *of misconduct by a
subordinate employee* cannot provide the basis for municipal
liability. Because Hilchey alleges that the policy was made by

-14-

authoritative officials in the City and Police Department that holding does not apply to the facts of this case.

Where the policy itself does not violate federal law but gives rise to subsequent conduct of subordinate employees which violates the plaintiff's rights, the analysis becomes somewhat more difficult.  <u>Board of County Comm'rs of Bryant County</u> v. <u>Brown</u>, 520 U.S. 397, 406 (1997); <u>City of Canton</u> v. <u>Harris</u>, 489 U.S. 378 (1989).  In such instances the municipality may be liable only if the policy maker was at least deliberately indifferent to the possibility that the policy in question would lead to a deprivation of federally-protected rights.

Before proceeding to apply these standards to the present case, this Court observes that the burden of proof at this stage is different from that applied above in determining qualified immunity for individual defendants.  In the preceding section the individual defendants were found to be entitled to qualified immunity because the existence of probable cause to arrest Hilchey was "at least arguable".  The municipal defendant enjoys no such forgiving standard and the ordinary summary judgment standard of construing all evidence in the light most favorable to the non-moving party compels a different review.  <u>Owen</u> v. <u>City of Independence</u>, 445 U.S. 622 (1980).

As a matter of general practice (i.e. outside of the realm of qualified immunity), the question of whether probable cause

existed is a matter for a factfinder to determine.  <u>Woodley</u> v.
<u>Town of Nantucket</u>, 645 F. Supp. 1365, 1370 (D. Mass. 1986).  On
the merits of the probable cause question Hilchey's evidence,
although equivocal, is sufficient to survive a motion for summary
judgment.  Therefore, for purposes of municipal liability,
Hilchey has alleged a deprivation of her constitutional rights
and the only remaining question is whether such a violation may
be attributed to the municipality.

   2.  **Application**

          a.  **The Alleged Policy**

     Hilchey characterizes the official policy of the Haverhill
Police Department as "to credit the statements of the neighbors
and to minimize the significance of Ms. Hilchey's statements".
She substantiates this characterization by reciting her history
of interactions with city officials, including 1) her letter of
complaint to Mayor Guerin which was apparently received the day
before the incident alleged in this case and 2) her husband's
suspension from the Police Department by Police Chief Brighi.

     Policy-making authority is a question of state law.  Because
both parties have assumed that at least Mayor Guerin and probably
Police Chief Brighi have exercised such authority, this Court
will not second guess that assumption.  <u>See</u> <u>Bryan County</u>, 520
U.S. at 408.  That means that any decision made by them, however
different in character it may appear from ordinary matters of

municipal policy, may, for § 1983 purposes, be attributed to the

municipality and give rise to municipal liability.[2]  The policy

that they are alleged to have adopted, however, i.e. ignoring

Hilchey's point of view in every neighborhood dispute, does not

in itself rise to the level of a violation of state or federal

civil rights.  The only specific violation that plaintiff has

alleged is her arrest which she contends was executed in the

absence of probable cause.  See Beck v. Ohio, 379 U.S. 89 (1964).

        In order to establish municipal liability, Hilchey must

demonstrate that the policy that may be attributed to the City

(the practice of taking her neighbors' side in every dispute) was

the cause of her constitutional violation.  The language used by

the Supreme Court to give more detailed guidance in making that

determination is, unfortunately, case-specific.  In Canton v.

Harris the issue was a failure to train and the Court spoke of

"deliberate indifference to the rights of persons with whom the

police come into contact".  489 U.S. at 388.  In Bryan County, in

_____

        [2]Municipal liability usually arises from written policies
adopted by the city or one of its agencies, as in Monell (policy
requiring pregnant employees to take medical leave) or cases
alleging a failure adequately to train employees or screen
applicants for employment in which the city's alleged negligence
is cited for the employee's eventual failure on the job.
However, "policies" of the sort alleged by Hilchey (that is, the
condoning of personal animus against an individual) have been
recognized on several occasions.  City of St. Louis v.
Praprotnick, 485 U.S. 112 (1988); Owen v. City of Independence,
445 U.S. 622 (1980).  The essential characteristic of a "policy"
is, therefore, its origin rather than its content.  See
Praprotnick.

the context of failure to screen applicants, the Court further limited liability to instances in which "this officer was highly likely to inflict the particular injury suffered by the plaintiff". 520 U.S. at 412.

Neither of the cited opinions fits precisely into a municipal policy of condoning animus towards a particular individual or family, as Hilchey has alleged. Bryan County is instructive, however, for its emphasis on the risk of a specific, foreseeable injury. Applying that principle to this case, if Hilchey can demonstrate that the police pursued the described policy (reflexively crediting the reports of neighbors with whom she is known to have longstanding conflict), there was a specific, foreseeable risk that she might be arrested without probable cause. Therefore, Hilchey's allegations are legally sufficient to support a claim of municipal liablity under § 1983 and the City's motion for summary judgment depends upon the sufficiency of her evidence.

### b.    The Evidence of Official Policy

The plaintiff offers three items of evidence that an official policy existed with respect to her and her husband:

1) She refers first to the deposition of Officer Melanson, the principal officer involved in her case. When asked what led to the decision to seek an arrest warrant, he gestured to the long list of prior incidents involving Hilchey and her neighbors

and said

> by the time I got [the call from Mrs. Monigle] all this
> stuff [indicating the prior record] had happened.  I'm sure
> everything was – It was time to do something.

That testimony, combined with the long history of disputes
between Hilchey and her neighbors to which Melanson refers,
supports the allegation that Hilchey had acquired a reputation
within the police department as a troublemaker and that the
department, as a unit, was generally receptive to claims brought
against her.

2) With respect to how far up the chain of command that
official reaction extended and to whether it could be fairly
attributed to the municipality (see Pembaur, 475 U.S. at 480)
Hilchey relies on a) Melanson's deposition testimony that he was
directed to seek the complaint by his superiors, b) a
supplemental police report of the incident describing a meeting
among several superiors and c) her prior history with the police
department and the Mayor.

3) Hilchey points out that her neighbors had complained to
the police about her conduct (her driving habits in particular)
on several prior occasions.  In September, 2001, over 20
neighbors, including the parents of the children involved in this
case, submitted a letter to Police Chief Brighi, in response to
which he met with them (but apparently not Hilchey) to discuss
their issues.  That meeting resulted in the posting of new signs

in their neighborhood, including one saying "SLOW - CHILDREN" and
another equipped with a radar device that displays the speed of
oncoming vehicles.  Following that meeting, Hilchey reported
several instances of vandalism on her property and was allegedly
treated rudely by the police officers who responded.  Hilchey
made a written complaint to Mayor Guerin and the return-receipt
on her letter indicates that it was received by City officials
the day before the incident alleged in this case.

Of course, the incidents described above include no direct
evidence of a policy targeting the Hilcheys.  They do, however,
offer enough context and circumstantial evidence to support the
conclusion that an alleged anti-Hilchey policy extended up to a
senior official (whether Mayor Guerin or Police Chief Brighi) who
had authority sufficient to attribute his actions to the City.


III. **Matters Remaining for Trial**

At the pretrial conference on January 30, 2008, the parties
requested clarification with respect to what issues have been
decided and what remain for trial in light of the disposition of
this motion.  At trial the plaintiff retains the burden of
proving a violation of her constitutional rights in order to be
entitled to any recovery, i.e., she must prove that she was
arrested without probable cause.  The dismissal of the individual
defendants from this case on qualified immunity grounds does not

determine that there was (or was not) such probable cause; this Court holds only that probable cause was "at least arguable".  If the plaintiff fails to prove that there was no probable cause to arrest her, her entire action must fail.

Furthermore, Hilchey must prove that the City had adopted an official policy or custom (whether it was a specific vendetta against her and her husband or a more general practice of condoning such vendettas) that was likely to produce a civil rights violation of the kind alleged and that the City was, at least, deliberately indifferent to such likelihood.  Only if plaintiff proves an actual violation of her constitutional rights and that the violation arose from a policy that may fairly be attributed to the City can she prevail.

**ORDER**

Because 1) the individual defendants are entitled to qualified immunity but 2) there remain genuine issues of material fact with respect to municipal liability, the defendants' motion for summary judgment (Docket No. 41) is, with respect to the § 1983 claim against the City of Haverhill, **DENIED,** but is otherwise **ALLOWED.**


**So ordered.**

                                        /s/Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge
Dated February 1, 2008